IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| Erika Hernandez and Paulo Regalado, as Guardians for their minor child, A.R.; ERIKA HERNANDEZ, individually; and PAULO REGALADO, individually, | Case No. 6:18-cv-00932-AA<br>**OPINION AND ORDER** |
| Plaintiffs, | |
| v. | |
| GOLF COURSE ESTATES HOME OWNERS ASSOCIATION, an Oregon nonprofit corporation; LEE EDWARDS, individually; LORI GIBSON, individually; and JACKIE WINTERS, individually, | |
| Defendants. | |

AIKEN, District Judge:

Plaintiffs Erika Hernandez and Paulo Regalado, individually and as guardians for their minor child, A.R., bring this action against defendant Golf Course Estates Homeowners Association ("HOA") and its board members, Lee Edwards, Lori Gibson, and Jackie Winters, for violations of the federal Fair Housing Amendments Act ("FHAA") and the Oregon Fair Housing Act ("OHFA"), as well as a claim for negligence. Now before the Court is plaintiffs' motion for partial summary judgment

Page 1 – OPINION AND ORDER

on liability (doc. 20) and defendants' motion for summary judgment as to the individual board members (doc. 23). For the reasons set forth below, both motions are denied.

## BACKGROUND

Plaintiffs' daughter, A.R., has developmental disabilities and attends a special needs elementary school. A.R.'s disability prevents her from assessing dangers, and she is prone to running into the street. A.R.'s Individualized Education Program ("IEP") provides her with specialized transportation to school that includes pick-up and drop-off directly in front of her house.

In February 2017, plaintiffs began renting a home in Golf Course Estates, a housing development overseen by defendant HOA, located in Marion County, Oregon. Individually named defendants Lee Edwards, Lori Gibson, and Jackie Winters serve as the board of the HOA ("the Board"). At all times material to this suit, defendant Edwards acted as the Chairman of the Board.

A.R.'s school bus picked her up and dropped her off in front of her home without incident from February 2017 until October 2017, when Hernandez learned that bus service would be discontinued. This policy change was instigated by Sharon Bowker, the HOA Board's secretary and manager, who complained to the Salem-Keizer School Transportation office that school buses were speeding on private streets. Ms. Bowker claimed that she and the Board were concerned for the safety of residents: the development has no sidewalks, so residents often walk in the narrow streets. The Board claims that three to four bus ran each morning and afternoon, at the same

times that other students were walking to the development's designated bus stop, presenting a safety risk and liability. The Board also noted the buses contributed to "heavy wear and tear on the streets" that "are privately maintained and paid for by homeowners." Aldworth Decl. Ex. 24 at 1. Ms. Bowker requested that the buses use the designated River Road stop unless they were picking up students with special needs.

After Bowker requested a vote on the bus issue on September 30, 2017, the Board voted to not allow school buses on the HOA roads. Bowker then sent e-mail to the school district's director of transportation, informing him that the roads were private and instructing the district stop routing school buses on the HOA roads. The district replied by noting that it would need to notify parents of students receiving specialized services, would stop bus service later in the month. On October 24, 2017, Hernandez learned from A.R.'s bus driver that the HOA had disallowed school buses on HOA streets and that A.R. would need to begin using the designated bus stop the following day.

On October 25, 2017, Hernandez wrote a letter to the Board explaining the nature of A.R.'s disability and the provision in her IEP calling for special transportation. Hernandez expressed concerns for A.R.'s safety if she had to use the River Road bus stop, which was located on a busier public street. She requested that the Board permit A.R.'s bus to continue door-to-door transportation as an accommodation under the Fair Housing Act. She also asked that the Board provide her a written explanation if they chose to deny her request. Later that day,

Hernandez received an email from Ms. Bowker stating that the Board voted to reinstate bus service as long as bus drivers adhered to speed limits. Hernandez requested written confirmation of the Board's decision from Ms. Bowker.

Ms. Bowker then emailed Salem-Keizer Public Schools' Director of Transportation Michael Shields, instructing him to temporarily continue bus service in the community. She explained that the Board received complaints from three HOA residents whose children were affected by the change and had elected to delay its final decision pending review in January. Ms. Bowker's email stated, "[i]t was not the HOA's intention to change any pick-up/drop off schedules for special needs children who were entitled to that service." Aldworth Decl. Ex 12 at 2. Mr. Shields responded, confirming that the only students receiving bus service in the community were those "requiring special assistance." Aldworth Decl. Ex. 12. He also explained that while school personnel could provide general bus information to the board, he could not provide any information about particular students and their needs due to HIPAA rules.[1]

On November 2, 2017, Mr. Shields received a formal letter from the Board, stating that the approval of bus services was temporary and that the Board was not required to allow the buses on Golf Course Estates' private streets. The letter stated

---

[1] The Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. 104-191, 110 Stat. 1936 (codified as amended in scattered sections of 42 U.S.C.) includes a Privacy Rule that protects individuals' health records and other personal information by, among other requirements, limiting the use and disclosure of such information without patient authorization. Joint Guidance on the Application of HIPAA and FERPA to Student Health Records, 4-5 (December 2019 Update).

Page 4 – OPINION AND ORDER

that the Board would be reconsidering the issue in early January 2018 and requested that Mr. Shields provide information about why door-to-door bus service was initiated and whether special program students had mobility issues. The letter also requested that Mr. Shield's send the Board the latest relevant city and state transportation regulations. Plaintiff Hernandez received a copy of this letter.

On January 26, 2018, the Board voted unanimously to disallow school buses from entering Golf Coast Estates' private streets. The Board sent a letter relaying that information to Mr. Shields on February 1, 2018. The letter stated that the Board had requested information about the HOA's legal obligations in allowing bus service and said that if Mr. Shields did not comply by February 23, 2018, the buses would not be permitted to enter the private streets. On February 20, 2018, Mr. Shields notified Plaintiff Hernandez that the Board directed him to stop bus service in the community. Other than this notice from Mr. Shields, Plaintiff Hernandez did not receive an explanation from the Board regarding its denial of her October 25 request.

After receiving Mr. Shields' notice, Hernandez notified her landlord, Nancy Buck, about the busing issue. Ms. Buck emailed Ms. Bowker on February 21, 2018, stating that the HOA's refusal to allow bus transportation for A.R. was unacceptable. Ms. Buck noted that the school district provided a letter for A.R. and said that transportation is "governmentally allowed." Ex. 20 to Aldworth Decl. at 2. Ms. Buck demanded "a reasonable explanation" as soon as possible. *Id.* Ms. Bowker forwarded the email to the Board the next day. Ms. Buck never received a response from the Board.

On February 23, 2018, Defendant Winters emailed Defendants Edwards and Gibson about a conversation she had with the District Superintendent where she "expressed that if we make a special exception, we could be setting ourselves up to discriminate against other students who reside here." Aldworth Decl. Ex. 21 at 1. Defendant Winters noted that the school district had a similar problem with another HOA and opined that the district was "trying to implement a new State initiative without doing all of their due diligence." *Id*. Ms. Bowker also emailed the Board to ask, "if the Association granted access to the 3 particular students… then would it have to grant access to school buses for all of the kids in the community?" Aldworth Decl. Ex. 22 at 2.

On February 26, A.R.'s door-to-door transportation was discontinued. The nearest designated school bus stop was on River Road, which defendants allege is a three-minute walk from plaintiffs' residence. Given A.R.'s disability, plaintiffs Hernandez and Regalado elected to drive A.R. to and from school every day after February 26.

In April 2018, Defendant Winters set up a meeting with the District Superintendent and the Board. The Board members had requested additional information about the three children's medical needs for door-to-door transportation. The Superintendent said the District could not provide students' medical information and told the Board that such information must be requested directly from the students' parents. The Board did not contact plaintiffs for A.R.'s medical information, and the ban remained in effect.

On April 18, 2018, plaintiffs' counsel sent a demand letter to defendants explaining the Board's legal requirements to provide reasonable accommodation under the FHA. The Board did not respond to plaintiffs' demands. and this lawsuit was filed on May 29, 2018. Two days later, on May 31, the Board reversed its policy to allow buses back into the community. The school year was nearly over, so plaintiffs determined it would not be worth changing A.R.'s routine for only a few days and notified the District that plaintiffs would continue driving A.R. for the remainder of the year. Plaintiffs resumed door-to-door pick up at the beginning of the following school year.

## LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a). As applied here, where the moving party bears the burden of proof at trial, that party must produce evidence that would entitle the party to a directed verdict if the evidence when uncontroverted at trial. *C.A.R. Transp. Brokerage Co., Inc. v. Darden*, 213 F.3d 474, 480 (9th Cir. 2000).

If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324; Fed. R. Civ. P. 56(e). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).

## DISCUSSION

Before the Court are two summary judgment motions. Plaintiffs move for partial summary judgment in their favor on the issue of defendants' liability for alleged violations of the FHAA. Defendants move for summary judgment requesting dismissal the individually named defendants from this suit.

The FHAA prohibits discrimination in the provision of housing services because of a handicap.[2] 42 U.S.C. § 3506(f)(2). "Discrimination" includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." *Id.* § (f)(3)(B). Oregon's fair housing statute is substantially similar to the federal law, and the two are interpreted identically. *Fishing Rock Owner's Ass'n v. Roberts*, 6 F. Supp. 3d 1132, 1138 n. 1 (D. Or. 2014).

To establish a prima facie case of discrimination for failing to provide a reasonable accommodation, a plaintiff must show that (1) she suffers from a disability under the FHAA; (2) defendants knew or reasonably should have known of the disability; (3) the requested accommodation may be necessary to afford the plaintiff an equal opportunity to use and enjoy her dwelling; and (4) defendants refused the accommodation request. *Kuhn v. McNary Estates Homeowners Ass'n, Inc.*, 228 F. Supp. 3d 1142, 1147 (D. Or. 2017) (citing *Giebeler v. M & B Assocs.*, 343 F.3d 1143,

---

[2] This Court will use the preferred term "disability" despite the FHAA's use of the term "handicap." *Sanders v. SWS Hilltop, LLC*, 309 F. Supp. 3d 877, 883 n. 6 (D. Or. 2018) (noting that disabled individuals find the term 'handicapped' objectionable) (citations and quotation marks omitted).

1147 (9th Cir. 2003).³ "The reasonable accommodation inquiry is highly fact-specific, requiring case-by-case determination." *United States v. Cal. Mobile Home Park Mgmt., Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997). Plaintiffs bear the burden of proving that the requested accommodation is reasonable and necessary on its face. *Kuhn*, 228 F. Supp. at 1147. "The threshold for pleading discrimination claims under the FHAA is low." *McGary v. City of Portland*, 386 F.3d 1259, 1262 (9th Cir. 2004). If plaintiffs meet their initial burden, the defendants may rebut the presumption of reasonableness and necessity by showing that "the accommodation would cause undue hardship in the particular circumstances." *Kuhn*, 228 F. Supp. at 1147 n. 3.

The Court addresses each parties' motion in turn.

I. *Plaintiffs' Motion for Partial Summary Judgment*

Plaintiffs request summary judgment in their favor arguing that there is no genuine issue of material fact as to whether they have satisfied the elements of their FHAA claim. The Court will discuss each element below.

A. *Plaintiff Suffers from a Disability*

The parties do not dispute that A.R. suffers from a disability protected by the FHAA.

---

³ Ninth Circuit case law identifies four elements in FHAA claims, although some courts have listed five. This nuance exists because the reasonableness of the accommodation—a threshold inquiry—is incorporated into the analysis at different stages by different courts. *Compare Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1147 (9th Cir. 2003) (listing four elements of a reasonable accommodation claim), and *United States v. Cal. Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997) (same), with *Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006) (listing five elements of a reasonable accommodation, including reasonableness of accommodation).

B.  *Defendants' Knowledge of the Disability*

Plaintiffs assert that Hernandez's October 25 letter requesting accommodation properly notified the Board and the individual defendants of A.R.'s handicap, satisfying the second element of their reasonable accommodation claim. Plaintiffs argue that Ms. Bowker corresponded with them about Hernandez's letter and notified her when the Board voted to reinstate the door-to-door pickup on October 25, 2017. Further, defendant Winters sent emails to board members and set up meetings with the School District about the busing issue leading up to and after the Board's final decision to disallow A.R.'s door-to-door transportation.

Defendants respond that the Board did not know of A.R.'s handicap until it received Hernandez's October 2017 letter. Defendants argue that they never received the requested verification from A.R.'s doctor or School District confirming A.R.'s medical need for door-to-door pickup, asserting, "[k]nowledge that someone is claiming to have a handicap is not the same as independent verification thereof." Defs.' Resp. to Pls.' Mot. Partial Summ. J. at 4. The Court finds this argument unpersuasive. When board members grant or deny a requested accommodation, they know of the disability. *See Sanzaro v. Ardiente Homeowners Ass'n, LLC*, 364 F. Supp. 3d 1158, 1177 (D. Nev. 2019) (finding that defendants "knew of Mrs. Sanzaro's handicap due to their service on the Board and involvement in the decisions to exclude [her] . . . These Defendants thus knew that Mrs. Sanzaro had a qualifying impairment"). The Board and its three individual members knew of A.R.'s handicap: from October 2017 until April 2018, Ms. Bowker forwarded the Board emails from

affected homeowners, including plaintiffs, which prompted the Board to hold meetings, deliberate, and ultimately prohibit special needs buses from using HOA streets. Plaintiffs have sufficiently shown that defendants knew A.R.'s handicap; therefore, they satisfy this element.

C. *Necessity of Accommodation*

To prove necessity, a plaintiff must show that "but for the requested accommodation, they will likely be denied an equal opportunity to enjoy the housing of their choice." *Kuhn*, 228 F. Supp. 3d at 1147 (quoting *Giebeler*, 343 F.3d at 1155). The necessity inquiry is essentially one of causation. *See Giebeler*, 343 F.3d at 1155. As such, plaintiffs must establish "an identifiable relationship, or nexus, between the requested accommodation and the individual's disability." Joint Statement of the Department of Housing and Urban Development and the Department of Justice on Reasonable Accommodation (May 17, 2004) *in* 1 Housing Discrim. Pr. Man. App'x 2C. "Without a causal link between defendants' policy and plaintiff's injury, there can be no obligation on the part of defendants to make a reasonable accommodation." *United States v. Cal. Mobile Home*, 107 F.3d 1374, 1381 (9th Cir. 1997).

Plaintiffs argue that when the Board discontinued door-to-door bus transportation, plaintiffs were denied equal use and enjoyment of their dwelling. Without the requested accommodation, plaintiffs had to choose between using the regular bus stop—not an appropriate option for A.R. because of her tendency to run into the street—and altering their schedules so they could drive A.R. to and from school every day. There is a clear nexus between the requested transportation

accommodation and A.R.'s disability in that the symptoms of A.R.'s disability require specialized transportation and make A.R.'s use of the regular public school bus stop unsafe. Plaintiffs "need not prove that the requested accommodation is the best or only way to solve a disability-related problem; the plain text of the statute requires a housing provider to make a reasonable accommodation that '*may* be necessary' to permit use and enjoyment of the home." *Kuhn*, 228 F. Supp. 3d at 1139 (emphasis in original).

Defendants acknowledge that this Court has recently found that the necessity element may be met by only a probability of necessity, *Kuhn*, 228 F. Supp. 3d at 1199, yet they still assert that 'may be necessary' means that the "accommodation is essential, not just preferable." Defs.' Resp. to Pls.' Mot. Partial Summ. J. at 5 (citing *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 107 (3d. Cir. 2018)). Defendants dispute that A.R.'s door-to-door transportation was essential or even probably essential, arguing that the service was provided to all special needs students without evidence of need. Defendants infer "that the accommodation was more for streamlined supervision onto the bus for teachers of students with disabilities . . . Rather than for accommodation of any one student's particular needs in enjoying his or her dwelling." Defs.' Resp. to Pls.' Mot. Partial Summ. J. at 6. Defendants also argue that A.R.'s doctor said she needed supervision at the bus stop, and only later (when prompted) did A.R.'s doctor amend his letter to say that A.R. needed door-to-door service. Finally, defendants point to the fact that plaintiffs declined to resume

bus service for the remaining days of the school year after the prohibition was reversed.

As noted above, plaintiffs' request need not be the best or only way to solve a disability-related problem to satisfy the necessity element. Plaintiffs have shown that their request was at least *probably* necessary, and Hernandez's decision to continue driving A.R. to school for the remaining days of the year does not prove that door-to-door transportation is *un*necessary. However, at this stage in the proceedings, the Court must view the evidence in the light most favorable to the non-movants. Defendants have pointed to enough facts in the record to create a genuine issue of material fact regarding whether the accommodation was necessary, and therefore summary judgment is not appropriate.

D.  *Reasonableness of the Accommodation*

Even if plaintiffs' requested accommodation is necessary, defendants need only provide it if it is also reasonable. *Kuhn*, 228 F. Supp. 3d at 1150; *see U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002) (plaintiffs must show that the requested accommodation "seems reasonable on its face."). An accommodation is reasonable under the FHAA "when it imposes no fundamental alterations in the nature of the program or undue financial or administrative burdens." *Giebeler*, 343 F.3d at 1157 (citations and quotation marks omitted). This inquiry examines whether the accommodation "is both efficacious and proportional to the costs to implement it." *Bhogaita v. Altamonte Heights Condominium Ass'n, Inc.*, 765 F.3d 1277, 1289 (11th Cir. 2014) (quoting *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d

775, 784 (7th Cir. 2002). The FHAA does not require that an accommodation be made if it "would constitute a direct threat to the health or safety of other individuals or . . . would result in substantial physical damage to the property of others." 42 U.S.C. § 3604(f)(9).[4]

Plaintiffs argue that their request for special transportation was reasonable, and that defendants did not dispute the reasonableness until this litigation commenced. However, the Court is unpersuaded by defendants' argument that the requested accommodation was unreasonable. Defendants have not demonstrated how allowing buses to pick up special-needs children on HOA roads constitutes an undue financial or administrative burden. While the HOA's roads are privately maintained, there is no evidence that specific areas of the roads were damaged by school buses. Rather, Defendant Edwards stated that the HOA had an obligation to take care of the streets, and when homeowners "see these vehicles coming through six times a day they question our – what we are doing about it." Aldworth Decl. Ex. 3 at 4 (Dep. of Lee Edwards). That homeowners questioned the HOA about bus traffic does not prove, on its own, that the buses amount to an undue financial or administrative burden.

---

[4] The direct threat determination relies on objective evidence, considering "(1) the nature, duration, and severity of the risk of injury; (2) the probability that injury will actually occur; and (3) whether there are any reasonable accommodations that will eliminate the direct threat." *Kuhn*, 228 F. Supp. 3d at 1151 (citing Joint Statement of the Department of Housing and Urban Development and the Department of Justice on Reasonable Accommodation (May 17, 2004) *in* 1 Housing Discrim. Pr. Man. App'x 2C).

Further, defendants provide little evidence that A.R.'s bus constitutes a direct threat to the health or safety of residents. In her deposition, Ms. Bowker testified that an elderly resident "felt threatened" but conceded that she did not recall any incidents where someone was harmed or threatened with harm by a school bus. Aldworth Decl. Ex. 2 at 12 (Dep. of Sharon Bowker). When asked whether school buses were more dangerous than other vehicles, Ms. Bowker said "I don't know." *Id.* at 13. She also acknowledged that she did not suggest any alternative to Hernandez's request that A.R.'s bus continue door-to-door service. However, viewing the evidence in the light most favorable to defendants, this Court finds that there is a genuine issue of material fact as to whether plaintiffs' request was reasonable.

E.  *Refusal of Accommodation Request*

The parties do not dispute that the HOA denied plaintiffs' accommodation request when they prohibited bus service on HOA streets.

For the reasons above, the Court denies plaintiffs' motion for partial summary judgment based on alleged violations of the FHAA pending further development of the record at trial.

II.  *Defendants' Motion for Summary Judgment*

Defendants move for summary judgment as to individual Defendants Edwards, Winters, and Gibson. Defendants argue that, as a matter of law, they cannot be held personally liable for alleged FHAA violations of the Board.[5] In other

---

[5] Defendants' motion asserts several other tangential arguments regarding individual liability. First, they argue that none of the individual defendants had the authority to grant or deny plaintiffs request. There is a genuine issue of material fact as to whether each of the individual defendants received and read Plaintiff Hernandez's October 2017 letter which described A.R.'s

words, defendants assert that this action should proceed against the HOA only. While the Ninth Circuit has not squarely addressed this issue, I disagree with defendants' blanket statement that individuals cannot be liable for violations of the FHAA. And, because there are genuine issues of material fact as to defendants' personal involvement in this matter, summary judgment is not appropriate.[6]

Defendants rely on *Rosenfield v. Hackett*, 2010 WL 5067960 (D. Or. Dec. 10, 2010) to support their proposition that an individual cannot be held liable for any discriminatory act of a housing authority board. There, the plaintiff did not request accommodation from the defendant, but rather from an entirely different government entity (the U.S. Department of Housing and Development) after the plaintiff no longer received benefits from the program administered by the defendant. *Id.* at *2. That court there applied rules from disability discrimination to relieve the defendant from individual liability. *Id.* But *Rosenfield* is not binding on this Court, and it is inapposite to the instant case. Here, plaintiffs communicated (through Ms. Bowker) to the three individual defendants who comprised the Board. Defendants unanimously voted to disallow busing after reviewing emails and letters from affected residents including Hernandez.

---

disability. Second, defendants argue that individually named defendants were unable to grant or deny plaintiffs' request due to HOA bylaws. This argument implicates the question of whether individuals can be held liable for their actions as members of the HOA.

[6] Defendants' reply in support of their motion for summary judgment cites Or. Rev. Stat. 65.369, which limits civil liability of "qualified directors" to acts that constitute gross negligence or intentional misconduct. The Court agrees that the individual defendants are qualified directors but declines to grant their motion until the parties' factual disputes as to each defendant's level of involvement and knowledge are resolved.

As mentioned above, the Ninth Circuit has not yet ruled on whether an individual defendant can be held liable for violating the FHAA. However, several district courts within our circuit have imposed individual liability. *See, e.g., Sanzaro v. Ardiente Homeowners Ass'n*, 364 F. Supp. 3d 1158, 1177-80 (D. Nev. 2019) (finding board members individually liable for denying reasonable accommodation); *Fielder v. Sterling Park Homeowners Ass'n*, 914 F. Supp. 2d 1222, 1229 (W.D. Wash. 2012) (holding that president and board members may be held individually liable for their personal involvement in FHAA violations); *United States v. Tropic Seas, Inc.*, 887 F. Supp. 1347, 1365 (D. Haw. 1995) (denying HOA board member's summary judgment motion because there was a genuine issue of material fact as to whether defendant participated or acquiesced in FHAA violations). Moreover, district courts across the country have held that individuals can be liable for FHAA violations. *See, e.g., Sabal Palm Condominiums of Pine Island Ridge Ass'n, Inc. v. Fischer*, 6 F. Supp. 3d 1272, 1294 (S.D. Fla. 2014) (holding president of HOA's board of directors liable for personally contributing to HOA's refusal to accommodate); *Housing Opportunities Project for Excellence, Inc. v. Key Colony No. 4 Condominium Ass'n, Inc.*, 510 F. Supp. 2d 1003, (S.D. Fla. 2007) (holding that HOA board members may be individually liable for personal involvement in alleged discriminatory acts during their tenure); *Chavez v. Aber*, 122 F. Supp. 3d 581 (W.D. Tex. 2015) (holding property owner, manager, and director liable for violations of the FHAA and compiling cases); *Miller v. 270 Empire Realty LLC*, 2012 WL 1933798 (E.D.N.Y. 2012) (holding premises superintendent individually liable for violating the FHAA). While the law is not

settled, defendants' blanket statement absolving them of individual liability as a matter of law is rejected. There is a genuine issue of material fact as to each individual defendant's involvement in the denial of plaintiffs' request. Accordingly, the Court denies their motion for summary judgment pending further development of the record.

## CONCLUSION

In sum, genuine issues of material fact exist as to several elements of plaintiffs' reasonable accommodation claim and the personal involvement of individual defendants in the Boards denial of plaintiffs' request. Accordingly, plaintiffs' Motion for Partial Summary Judgment (doc. 20) on the issue of liability is DENIED. Defendants' motion for Summary Judgment as to individual defendants (doc. 23) is also DENIED.

IT IS SO ORDERED.

Dated this <u>10th</u> day of <u> April </u>, 2020.

         <u>   /s/Ann Aiken   </u>
         Ann Aiken
         United States District Judge